THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BARNEY LEE ANDERSON, Defendant-Appellant.

(No. 56946; ▓▓▓▓▓▓▓▓▓▓▓▓▓)

First District (3rd Division)—February 22, 1973.

Robert B. Rosen, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Ronald G. Maimonis, and Mark T. Zubor, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

On May 21, 1971, the defendant, Barney Lee Anderson, pled guilty to an indictment charging him with the offenses of murder, aggravated kidnapping, attempted deviate sexual assault, attempted rape and armed

robbery. For the offense of murder he was sentenced to not less than 30 nor more than 95 years; for the offense of aggravated kidnapping he was sentenced to 30 to 95 years; for the offense of attempted deviate sexual assault he was sentenced to 5 to 10 years; for the offense of attempted rape he was sentenced to 5 to 10 years; and for the offense of armed robbery he was sentenced to 30 to 95 years, with all five sentences to run concurrently. In this appeal the defendant contends that it was error for the trial judge to accept his plea of guilty because he did not make a voluntary and understanding waiver of his right to a jury trial and the trial judge's admonishments did not comply with Illinois Supreme Court Rule 402. (Ill. Rev. Stat. 1971, ch. 110A, par. 402.) The defendant also argues that the sentence imposed upon him by the trial judge was excessive and should be reduced.

We affirm.

On February 16, 1970, the defendant and a codefendant were charged with the offenses that allegedly occurred on January 28, 1970. Between the date of his indictment and the date of his guilty plea the defendant was given three psychiatric examinations.

In April, 1970, on a defense motion, the defendant was examined by the Behavior Clinic of the circuit court. In June, 1970, the court granted a defense petition that the defendant be given a neurological examination at Mount Sinai Hospital by a private physician. The physician's report showed no gross evidence of neurological impairment. In April, 1971, the court granted a defense motion to have the defendant examined by the Psychosomatic and Psychiatric Institute, Michael Reese Hospital. The examining physician's report stated that the defendant, a man of average intelligence, has little self-control and is capable of strong reactions of almost psychotic proportions when under emotional stimulation. These reports were submitted to the trial judge and were made part of the record in this case.

On May 21, 1971, the defendant and his appointed attorney, Mr. Sherman Magidson, appeared before the trial judge and the following colloquy occurred:

"MR. MAGIDSON: I would like, however, your Honor, or I would appreciate it if the case would be passed for ten or fifteen minutes, to have an opportunity to discuss it with my client.

THE COURT: We will pass the case until sometime as you have finished your conference with Barney Anderson.

\* \* \*

[After an interval of time, the following proceedings were had:]
THE CLERK: Barney Anderson.

THE COURT: Barney Anderson, I am advised by your lawyer, Mr. Sherman Magidson, that you wish to waive a jury trial. Is that correct?

MR. ANDERSON: That is correct.

THE COURT: Do you know how many people there are on a jury trial?

MR. ANDERSON: Twelve.

THE COURT: What do these 12 people decide?

MR. ANDERSON: The destiny of human life.

THE COURT: That is correct; whether you are innocent or guilty, is that correct?

MR. ANDERSON: Yes.

THE COURT: Now, knowing that, do you wish to waive your right to a jury trial and submit your case to this Court without a jury?

MR. ANDERSON: Yes.

THE COURT: If you do, you may sign the jury waiver which is being handed to you now by your attorney, Mr. Magidson.

MR. MAGIDSON: May the record show Mr. Anderson signed a jury waiver and we are handing it to the Court for filing.

THE COURT: Is this your signature?

MR. ANDERSON: Yes.

THE COURT: You signed it on a voluntary basis?

MR. ANDERSON: Yes, sir.

THE COURT: No one threatened you or no one forced you to sign this?

MR. ANDERSON: No, sir.

THE COURT: Thank you very much.

Now, I understand, Mr. Anderson, that you wish to change your plea from not guilty to guilty, in an indictment charging you with murder. Is that true?

MR. ANDERSON: This is true.

THE COURT: You understand on the charge of murder I can sentence you to the Penitentiary from 14 years to life? You know that?

MR. ANDERSON: I know it's that way.

THE COURT: You know there is a possibility on a charge of attempted rape that I can send you to the Penitentiary for one year to 14 years, do you understand that?

MR. ANDERSON: Yes, sir.

MR. MAGIDSON: Four to 14 years.

MR. PARRISH: Right.

THE COURT: I'm sorry. Four to 14 years. Thank you, Mr. Magidson.

You understand on attempted deviate sexual assault I could send you to the Penitentiary for, I believe, it's one to 14.

Is that correct?

MR. PARRISH: Yes.

THE COURT: Yes, one to 14.

You understand on the aggravated kidnapping I could send you to the Penitentiary for not less than two years or to life, any number of years, on aggravated kidnapping?

You understand on a plea of guilty to armed robbery I can send you to the Penitentiary for not less than two years nor more than life? Do you understand that?

MR. ANDERSON: Yes.

THE COURT: All right. Full well knowing that, do you now enter a plea of guilty on all these charges because, in fact, you are guilty; is that correct?

MR. ANDERSON: Yes, sir.

THE COURT: All right. Now, there have been no promises made to you, other than the possibility that if the factual basis is correct, as presented by the State's Attorney, and after I hear from your lawyer, I may send you to the Penitentiary for not less than 30 years nor more than 95 years? Do you understand that?

Full well knowing that, you entered a plea of guilty. There are no threats being made to you by anyone and no one has used any force upon you to enter that plea; is that correct?

MR. ANDERSON: Yes.

THE COURT: You have entered that plea because, you are, in fact, guilty."

Immediately after these proceedings the court heard the factual basis for the plea, at which time the State submitted the defendant's fourteen page confession. The parties stipulated that the defendant's age was 27 years and a finding of guilty was entered for each offense. A hearing in aggravation and mitigation was conducted after which the defendant was sentenced.

Relying on *Boykin v. Alabama* (1969), 395 U.S. 238, and Supreme Court Rule 402 (Ill. Rev. Stat. 1971, ch. 110A, par. 402), the defendant contends that it was error for the trial judge to accept his guilty plea because the trial judge's admonishments failed, in a number of respects, to comply with the requirements that are set out in the au-

thority he cites. He argues that due to these faulty admonishments his guilty plea was not voluntarily and understandingly made.

Specifically, the defendant alleges that he could not have knowingly waived his right to a jury trial because the trial judge did not specifically inform him that he had a right to trial by jury.

■■ In order to constitute a proper jury waiver the record must affirmatively show: (1) an expression on the part of the defendant that he desires to reject his right to be tried by a jury, and (2) that he do so understandingly and voluntarily after interrogation by the court. (*People v. Gaston* (1971), 132 Ill.App.2d 900, 270 N.E.2d 846.) Whether a waiver has been knowingly made depends upon the facts and circumstances of each case. *People v. Wesley* (1964), 30 Ill.2d 131, 195 N.E.2d 708; *People v. Spencer* (1969), 115 Ill.App.2d 398, 253 N.E.2d 672.

■■ In light of the thorough questioning conducted by the trial judge that is set out above, and with particular reference to the defendant's affirmative response to the court's question, "Now, knowing that, do you wish to waive your right to a jury trial and submit your case to this Court without a jury?", we find the defendant's contention that he was not informed of his right to a jury trial to be frivolous.

The defendant next alleges that error was committed when the trial judge failed to admonish him with respect to his right to persist in his plea of not guilty (Ill. Rev. Stat. 1971, ch. 110A, par. 402(a) (3)), his right to confront witnesses against him (Ill. Rev. Stat. 1971, ch. 110A, par. 402(a) (4)) and his right against self-incrimination.

■■ The constitution requires that a plea of guilty be "intelligent and voluntary." The holding in *Boykin* states that if a guilty plea is to withstand appellate review, the record must affirmatively disclose that the defendent who pleads guilty enters his plea understandingly and voluntarily. In *North Carolina v. Alford* (1970), 400 U.S. 25, the court said that the standard of validity of guilty pleas is whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant.

■■■ With the intent to implement the *Boykin* decision, the Illinois Supreme Court introduced Rule 402 which enumerates certain requirements that the trial judge must substantially comply with before a guilty plea can be accepted. The committee comments to this rule make clear that its purpose is to insure that the guilty plea of the defendant be intelligently and understandingly made. In *People v. Mendoza* (1971), 48 Ill.2d 371, 270 N.E.2d 30, the court said that the fact that the defendant was not specifically admonished by the court, as to each and

every consequence of his plea does not sufficiently demonstrate that he was, in fact, unaware of these consequences. A review of the briefs and record in the instant case indicates that here, as in *Mendoza,* there is nothing to contradict the voluntary character of the defendant's plea. (See, *People v. Behning* (1972), 5 Ill.App.3d 357, 283 N.E.2d 302.) Supreme Court Rule 402 requires a trial judge to insure that a defendant made, on the record, an intelligent and understanding guilty plea through substantial compliance with the provisions of the rule, but it does not require him to parrot a number of specifically proscribed, formal phrases that would render these constitutional guarantees counterproductive and put in jeopardy the very values they were meant to preserve. We find there was no violation of the rule in the instant case.

The defendant also argues that due to his otherwise good character and the circumstances surrounding the commission of these offenses, the sentence of 30 to 95 years imposed by the trial court is excessive and should be reduced.

■■ A court of review will not disturb the sentence imposed by the trial court unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose, or that the penalty is not proportioned to the nature of the offense. *People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673; *People v. Caldwell* (1968), 39 Ill.2d 346, 236 N.E.2d 706.

The facts that gave rise to the indictments in this case, as described by the defendant in his confession, are as follows: After spending the evening drinking, the defendant and a codefendant, Frank Charleston, left Charleston's home in the defendant's car in order to steal a small calf with the apparent intention of butchering the animal for their own personal consumption. To facilitate their plan they brought with them a "three pound sledge hammer."

A short distance from Charleston's house they came upon a woman motorist whose car had run off the road and was stuck in a ditch. The defendant and Charleston stopped and offered to pull the car out for $10. In spite of the fact that she declined their offer, they backed the woman's car onto the road, but immediately pushed it into the ditch on the other side, this time demanding $20 for its removal. She again declined.

Charleston then became angry and struck the woman, tore her clothing off and began to molest her. The two men then put their victim into the defendant's car and for the next few hours drove around the north suburban Cook County area. She was continually protesting during this time. As they drove the defendant and Charleston each in turn, at

various times, attempted to rape their victim and demanded that she perform deviate sexual acts upon them. Each time she refused they would strike her with their fists and then with the hammer. The molestation and physical violence continued until, reaching a deserted construction site and deciding they must kill their (now semi-conscious) victim in order to prevent their identification, one of them "hit her with the three pound sledge hammer in the head and then it was all over." They hid the body and returned to the site of the original abduction.

After taking $41 from the deceased's purse, they drove her car to the construction site, placed her body in her car, drove it into a ditch and set the vehicle on fire in an attempt to disguise the murder as a traffic accident. In a further effort to hinder their detection, the defendant and Charleston abandoned the defendant's bloodstained car intending to notify the police that it had been stolen earlier in the evening. Immediately after his arrest the defendant made a voluntary confession which recounted these facts.

■■ In view of these facts, we find that the sentence imposed upon the defendant was not violative of the principles of law we have set out, and, therefore, the sentence will not be reduced.

For the above reasons we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

DEMPSEY, P. J., and McNAMARA, J., concur.