THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.*
THOMAS PERKINS, Petitioner-Appellant.

First District (3rd Division)   No. 76-1393

Opinion filed September 28, 1977.

James Geis and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Linda Ann Miller, and William M. Montgomery, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The post-conviction petition of Thomas Perkins was dismissed without an evidentiary hearing. In this appeal, he contends that matters raised by his amended petition and supported by affidavits require an evidentiary hearing on the question of his competence at the time he entered a negotiated guilty plea.

The record shows that on April 10, 1974, after a jury had been selected, Perkins' appointed trial counsel requested a conference concerning the charges against him. Perkins consented to this procedure. As a result of the conference, it was agreed that the State would reduce the two counts of murder and one count of attempted murder with which he was charged to two counts of voluntary manslaughter and one charge of aggravated battery in return for Perkins' guilty pleas. (Ill. Rev. Stat. 1973, ch. 38, pars. 9—2 and 12—4.) The State agreed to recommend two terms of 5 to 15 years and one term of 3 to 9 years respectively for the offenses, with the sentences to run concurrently. After Perkins was fully admonished in compliance with Supreme Court Rule 402 (Ill. Rev. Stat. 1973, ch. 110A, par. 402), the trial court accepted the pleas and sentenced him in accord with the terms of the agreement. Perkins has not questioned the sufficiency of the admonishments, and no direct appeal was taken from these proceedings.

Perkins sought post-conviction relief (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 et seq.) 18 months later. His petition alleged three violations of his

constitutional rights: (1) his appointed trial counsel was incompetent, (2) there was no factual basis for entry of the guilty pleas, and (3) he was not competent at the time he entered his pleas of guilty.

The trial court, after an evidentiary hearing on Perkins' first allegation, found that his appointed trial counsel was not incompetent. The court also examined the stipulated facts introduced at the proceedings when the guilty plea was entered and found a factual basis for the pleas. Neither the trial court's determination of appointed counsel's competency nor the sufficiency of the factual basis for the pleas is questioned in this appeal.

When conducting an evidentiary hearing, the trial court rejected Perkins' claim that he was incompetent at the time he pled guilty, finding that his pleas were made voluntarily. Perkins contests the correctness of this determination. He claims the affidavit of a certified psychologist who examined him for 2½ hours at the penitentiary approximately 18 months after his guilty pleas, supported in part by the psychiatric evaluation of a psychiatrist employed by the Illinois Department of Corrections at the Menard Psychiatric Center entitles him to an evidentiary hearing on the question of his competence.

The affidavit of the psychologist averred that she administered a series of tests to Perkins, which showed his I.Q. was 71. She concluded that he was a borderline mental defective as defined by the Wechsler Adult Education Scale and that he was mentally retarded under section 5—1—13 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—1—13). Her opinion was that this condition was the result of impaired development rather than a sequel to an earlier disease. The psychologist also stated that as a result of his mental retardation, Perkins had personality traits including periods of acute anxiety, which reflected possible elements of psychotic-like behavior. Because of Perkins' lack of mental ability, the psychologist concluded that he was unable to understand and interpret complex demands upon his judgment, and that he had "an acquiescence bias" leading him to agree with requests made of him by persons he trusted.

The psychologist further stated in her affidavit that these characteristics existed at the time Perkins entered his guilty pleas, and that because of them, Perkins was unable to distinguish between voluntary manslaughter and self-defense at the time he entered his pleas, and was not able at that time to evaluate realistically his guilt or innocence, or to understand the consequences of his pleas. She concluded that petitioner was unfit to stand trial at the time he entered his pleas of guilty, that he lacked the ability to enter a voluntary and intelligent plea and that he would have acquiesced in any instructions given to him by the court or his counsel even though he disagreed with them.

The psychiatric evaluation compiled a few weeks after the psychiatrist's examination stated that Perkins' logic and beliefs were typical of a person with a borderline level of knowledge or adaptation. It noted that his syntax was poor and that this might be the result of "uncorrected impairments commonly seen in the so-called minimal brain functional impairments." The psychiatrist also observed that the patient did not appear very sophisticated or confident of his own capacity to think for himself, and noted his gullibility to the statements of other prisoners.

Perkins, in his affidavit filed in the post-conviction proceedings, denied that his attorney had explained the concept of self-defense to him.

The record also contains the affidavit of Perkins' appointed trial counsel, who stated that Perkins did not exhibit any sign of mental illness during their conversations while he was representing Perkins, during the 3-day jury selection process or at the guilty plea proceedings. He also stated that Perkins was rational during his interviews with him and in those interviews answered all questions relative to the case. The same attorney at the evidentiary hearing on his competence testified that he interviewed Perkins at the county jail, Perkins told him what the charges were and he claimed self-defense. In addition, the attorney testified that he asked Perkins whether he ever had been in a mental institution and Perkins responded in the negative.

■■ To enter a valid plea of guilty, the accused must understand the nature of the charges and the purpose of the proceedings against him, and must be competent to assist in his own defense. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(a); *People v. Heral* (1976), 62 Ill. 2d 329, 342 N.E.2d 34.) After entering a plea of guilty, a defendant may use the vehicle of post-conviction review to challenge his competency to have pleaded guilty. (*People v. Barkan* (1970), 45 Ill. 2d 261, 259 N.E.2d 1.) However, in such proceedings, the burden is upon the defendant to establish facts which, if known to the trial court when the guilty plea was entered, would have raised a *bona fide* doubt as to his ability to plead. *Barkan; People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.

■■ The question to be decided is whether the affidavits of Perkins and the psychologist, together with the psychiatrist's evaluation, require an evidentiary hearing on the issue of Perkins' competence to plead guilty at the time the plea was entered. Perkins' low I.Q. does not in itself indicate an intelligence level which establishes he was incompetent to plead guilty. (See *Barkan; People v. Southwood* (1971), 49 Ill. 2d 228, 274 N.E.2d 41.) Nor would the periods of acute anxiety he was said to have undergone be sufficient to raise a *bona fide* doubt about his competency. (See *People v. Cyburt* (1977), 50 Ill. App. 3d 414, 364 N.E.2d 1004; *People v. Pack* (1976), 34 Ill. App. 3d 894, 341 N.E.2d 4.) Further, Perkins had no

prior history of mental disorder or recent hospitalizations for psychiatric illness (*People v. Pierce* (1977), 50 Ill. App. 3d 525, 365 N.E.2d 988), which might be a reason for questioning his competency.

■■ It is apparent that neither Perkins' own appointed counsel nor the trial judge who presided at Perkins' trial discerned any reason to believe that he was incompetent, that his judgmental capability was impaired or that he was only acceding to counsel's demand or the court's request in pleading guilty.

The trial judge had an opportunity to observe petitioner during the 3-day jury selection process, and while admonishing Perkins and receiving his responses during the guilty plea proceedings, and a review of the proceedings at which the guilty plea was entered shows that Perkins answered all questions propounded to him by the trial court and indicated no misunderstanding. And, Perkins' trial counsel disputed the contention that Perkins was unable to assist in his own defense or understand the nature of the proceedings.

On the other hand, the examination by the psychiatrist took place 18 months after the plea was entered, and it is based on Perkins' condition at the time of the examination, rather than at the time of his plea. (See *Skorusa*, at 586.) The affidavit of the psychologist related Perkins' mental retardation and the personality disorders she observed at the time she examined him to his competency 18 months earlier. However, her affidavit did not state the basis for her opinion that Perkins' retardation and personality traits existed at the time of his trial to the extent that he was incapable of entering a voluntary and intelligent plea.

■■ We are mindful of this court's observation in *People v. Walton* (1973), 15 Ill. App. 3d 896-900, 305 N.E.2d 395, that the dismissal of a petition raising the issue of the competence of an accused to stand trial should not be lightly affirmed without an evidentiary hearing, because the result is to send a person to imprisonment without affording his counsel the opportunity to present evidence in an attempt to establish the defendant's incompetency at the time of his trial, conviction and sentencing.

But the facts in this case differ significantly from those in *Walton*, and do not require a reversal here. The mental disorder in *Walton* warranting a competency hearing was characterized as schizophrenic psychosis, not as low intelligence or mental retardation accompanied by certain personality traits. Also, the length of time between the conviction of the defendant in *Walton* and his diagnosis as a mental defective was 6 months and not, as in this case, a year and a half. Similarly, in *Skorusa*, the court concluded that psychiatric reports based on examinations 2½ and 4 years after the conviction did not provide a substantial showing of incompetence at the time of trial.

■■ We do not believe a *bona fide* doubt of Perkins' competence to

plead guilty has been established by the record before us. His low intelligence level was not in itself a sufficient reason to necessitate an evidentiary hearing on the issue of his·competence at the time of his plea. And the personality disorders found by a psychologist 1½ years after his plea were not enough to create a *bona fide* question on that issue. The trial judge did not err in his decision not to grant an evidentiary hearing on this issue. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.