THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT RYAN, Defendant-Appellant.

Second District   No. 78-102

Opinion filed August 21, 1979.—Rehearing denied September 11, 1979.

Mary Robinson and Elizabeth Clarke, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Robert Ryan, was charged by information with the offense of burglary. Defendant entered a plea of guilty to the charge and was sentenced to two to six years' imprisonment. Thereafter, defendant moved to vacate his guilty plea, or in the alternative, for a reduction in sentence. Both motions were denied, and defendant appeals.

Initially, defendant had pleaded not guilty at his arraignment on February 9, 1977; however, at a pretrial conference held on July 8, 1977, defendant withdrew his plea of not guilty and entered a plea of guilty to the burglary charge. The trial court admonished defendant pursuant to Supreme Court Rule 402 (Ill. Rev. Stat. 1977, ch. 110A, par. 402), including the fact that the trial court can impose a term of imprisonment

of one to 20 years, a possible fine of $10,000 and that there was a mandatory parole period of three years. Defendant indicated that he understood the admonishments.

On August 12, 1977, a sentencing hearing was held. It was conducted in two stages; the first portion was devoted to hearing testimony on defendant's application for probation. Defendant's psychiatrist, Dr. Schumack, testified that defendant had voluntarily admitted himself to Mercy Center in Aurora on April 6, 1977. After extensive testing, it was determined that defendant was psychotic or out of touch with reality; however, defendant was responding well to treatment by drugs. Further, it was discovered that defendant was suffering from an auditory perceptual problem, which Dr. Schumack explained as being one of assimilating ideas or making sense out of words, so that in stressful situations the spoken words of others made no sense to defendant. According to Dr. Schumack defendant was making progress and would not be involved in delinquent behavior in the future, nor was he a danger to society; on the other hand, however, incarceration would be extremely destructive to defendant. A Batavia police captain, defendant's employer and defendant's mother all testified as to defendant's improvement since his hospitalization and release. A probation officer testified that during an interview several months previous defendant was friendly, cooperative and mentioned that he thought his sentence would be reduced; however, when the probation officer mentioned the possibility of incarceration, defendant's attitude changed. However, on cross-examination, the probation officer admitted he had not had any contact with defendant since his stay at Mercy Center. The State recommended that defendant be denied probation. The trial court denied probation, finding that imprisonment of the defendant was necessary for the protection of the public, and that a sentence of probation would deprecate the seriousness of defendant's conduct and would be inconsistent with the ends of justice.

The sentencing hearing then proceeded with the trial court hearing evidence in aggravation and mitigation. Defendant's girlfriend testified as to their marriage plans and defendant's improvement in attitude towards himself and other people. Defense counsel then made a motion that defendant be permitted to make application to a work-release program. In sentencing, the trial court indicated it would consider the motion at the close of all the evidence on aggravation and mitigation together with the other factors. The State presented no additional evidence and made no sentencing recommendation. The trial court then asked defendant if he had anything to say. Defendant indicated that he did not understand the trial court's question, but after prompting by his attorney, defendant stated that while he thought he should be punished for the offense, he wanted to go on work release to keep his job, pay his bills and still see his psychiatrist.

In imposing sentence the trial court stated:

> "Again, the Court imposing sentence at this time is a result of your own conduct in—not only in the past, but also two offenses for which you stand convicted at this time."

The trial court then sentenced defendant to two to six years' imprisonment and to pay court costs. The court then admonished defendant of his right to appeal or withdraw his guilty plea. When the trial court asked defendant if he understood the admonishments, defendant responded, "No, it's too far over my head." The trial court then further explained the defendant's right to appeal or to withdraw his guilty plea, and defendant responded, "Okay."

Thereafter on August 29, 1977, defendant filed a motion to withdraw his guilty plea, or in the alternative to reduce his sentence. At the hearing on the motion, Dr. Schumack again testified as to defendant's admittance to Mercy Center, suffering an acute psychotic episode and his successful treatment through the use of drugs. On cross-examination Dr. Schumack testified that defendant was able to communicate with him, though occasionally not making direct responses to questions. On redirect examination he explained that an individual suffering from such a perceptual problem may give answers he feels the other listener wants; such a person could easily be led by a person in authority such as his father or attorney.

Defendant's attorney at the time of his guilty plea testified that defendant was vague and very unresponsive in conversations with him. He stated that there was an offer by the State of two years' probation with six months' imprisonment. However, in light of the imprisonment condition which it was believed would set defendant back in his treatment, in a discussion among defendant, his father and the attorney it was agreed that it was more advantageous for defendant to plead "cold" and ask for probation. The attorney testified that in his discussions with defendant he had indicated defendant would receive a sentence of six months in the county jail followed by a term of probation; that the maximum he would receive in this situation would be one to three years' imprisonment; that defendant did not understand that he could get more than that; and that the attorney was responsible for that misapprehension. Defendant's father testified he had told defendant that there were three alternatives facing him, namely, a jury trial, the State's plea offer, or a "cold plea" with a maximum of one to three years and a good chance of probation, and it was his and the attorney's suggestion that defendant take the "cold plea." Defendant testified that he believed he would receive probation. After hearing arguments, the trial court found that defendant was competent to plead, that the plea was voluntary and the sentence appropriate.

Defendant contends that the trial court erred in denying the motion

to withdraw his guilty plea. He argues that the plea was not voluntarily and understandingly made. Defendant relies on the testimony that his father and his attorney assured him that he would most likely get probation and that defense counsel admitted he failed to take adequate steps to advise defendant of the sentencing possibilities with a "cold plea."

Whether or not a defendant should be allowed to withdraw a plea of guilty is within the trial court's discretion and such a decision will not be disturbed on appeal, unless there is an abuse of discretion. Generally the withdrawal of a plea will be allowed where it appears the plea resulted from misapprehension of law or fact or in consequence of misrepresentation by counsel, state's attorney or someone else in authority. *People v. Young* (1977), 52 Ill. App. 3d 671, 674, 367 N.E.2d 976, 978.

■■ While defendant's attorney had represented to defendant that the maximum sentence he would receive would be one to three years' imprisonment, defendant had also been expressly admonished by the trial court that the sentence imposed could be an indeterminate term of not less than one nor more than 20 years' imprisonment and a possible fine not to exceed $10,000 and that as a part of that sentence there is a mandatory parole period of three years. The trial court emphasized to defendant that it was completely within the discretion of the trial court as to what penalty might be imposed. Defendant repeatedly indicated that he understood the trial court's admonishment. Rather than a denial of due process, the record here reflects that defendant's attorney made an error in judgment as to the maximum penalty the trial court would impose on defendant. Unless, however, that error was induced by the State or by the judge's conduct, defendant is not entitled to relief. (See *People v. Lambrechts* (1977), 69 Ill. 2d 544, 372 N.E.2d 641.) Such is not the situation here.

■■ As for the assurances that defendant would receive probation, in *People v. Taylor* (1977), 48 Ill. App. 3d 925, 363 N.E.2d 643, defense counsel told defendant that he felt defendant stood an excellent chance at receiving probation. When he received a prison sentence instead, defendant sought to withdraw his guilty plea. The reviewing court held that the mere hope for probation by pleading guilty does not entitle a defendant to withdraw his guilty plea when probation is not forthcoming. Further, in the case before this court, when the trial court advised defendant that he had a right to apply for probation which the trial court would consider, the trial court also advised defendant that if probation was denied the trial court could enter the penalties outlined above.

Next, defendant argues that he was not competent to enter a plea of guilty. Defendant based this contention on the testimony of Dr.

Schumack that defendant was treated for an acute psychotic episode, for which he was hospitalized from April 6, 1977, to June 22, 1977, and his auditory perceptual problem. Defendant argues that two points during the sentencing hearing evidenced this latter problem, namely, (1) when he indicated to the trial court that he didn't understand at the time he was asked if he wanted to say anything, and (2) where he said it was too far over his head when the trial court explained his right to appeal.

■■ The test of competency is the same whether the defendant is standing trial or pleading guilty; if a defendant is capable of understanding the proceedings and assisting in his own defense he is competent to plead guilty. (*People v. Heral* (1976), 62 Ill. 2d 329, 342 N.E.2d 34.) A mere history of psychological disturbance does not necessarily show incompetence; a defendant may be competent to plead guilty even though he or she may have certain mental or emotional disturbances. *People v. Heral.*

■■ Despite Dr. Schumack's testimony concerning defendant's illnesses and defense attorney's testimony that at times defendant was unresponsive during conversations, overall the record before us indicates defendant did understand the proceedings and was able to cooperate with his attorney. As to the first specific remark relied on, defendant having had the question clarified by his attorney, gave an intelligent and thoughtful response to the trial court's question; as to the second remark, following defendant's response that, "It's too far over my head," the trial court again explained how to withdraw his guilty plea if he so desired and defendant responded, "Okay." Further, we would point out that since defendant did thereafter file a timely motion to vacate his guilty plea he was sufficiently able to comprehend and follow the trial court's direction.

On the basis of the preceding discussion, we determine that the trial court did not err in denying defendant's motion to vacate his guilty plea.

Defendant's second contention on appeal is that the trial court abused its discretion in sentencing the defendant when it considered in aggravation the defendant's two prior felony charges which were subsequently reduced to misdemeanors. Defendant's contention involves the following colloquy at the sentencing hearing:

> "THE COURT: All right. Again, as I say, with three convictions on burglary, you are not being buried in the penitentiary system, and I feel * * * the future can be bright for you in the future if you so desire.
>
> ASSISTANT STATE'S ATTORNEY: Your Honor, excuse me. So there can be no misunderstanding, the Court, I believe, just said for the three convictions on burglary.
>
> THE COURT: Well, the two prior ones reduced to misdemeanors.

ASSISTANT STATE'S ATTORNEY: Thank you.

THE COURT: Where probation had been made. * * *"

Defendant argues that in view of the substantial evidence presented in mitigation, the fact that the State, though opposing probation, made no sentencing recommendation, and that defendant's only adult record consisted of two convictions for misdemeanor theft, only the trial court's improper consideration of the two prior felony charges for burglary (which were reduced to the misdemeanor theft charges) could account for a two- to six-year sentence rather than a one- to three-year sentence.

■■ We disagree. In denying defendant's application for probation, the trial court noted that the two prior burglary charges had been reduced to misdemeanor thefts and that defendant had received probation on the basis that rehabilitation would be accomplished. The same argument for probation was again presented in this case. The trial court determined that the third time around imprisonment was necessary. It is clear that the trial court placed the emphasis not on the original charges but on the fact that two prior attempts at probation had failed. Further, as regards the colloquy quoted above, the trial court's misstatement was immediately corrected by the assistant state's attorney and the correction was noted by the trial court, though again it emphasized that probation had been granted in those cases. Further, in light of those two previous misdemeanor convictions, we cannot say that the trial court abused its discretion in imposing a two- to six-year term of imprisonment rather than a one- to three-year term.

For all the foregoing reasons we affirm the judgment of the circuit court of Kane County.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.