THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY L. TURNER, Defendant-Appellant.

Second District   No. 81—678

Opinion filed December 30, 1982.—Rehearing denied January 28, 1983.

G. Joseph Weller and David S. Morris, both of State Appellate Defender's Office, of Elgin, for appellant.

Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of Elgin, for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Henry L. Turner was charged with attempted murder, home invasion, and burglary. On his motion, the trial court ordered that Doctors J. G. Graybill and Carl H. Hamann examine him to determine his fitness to stand trial and his sanity at the time of the offense. After a hearing at which Doctors Graybill and Hamann, as well as defendant and his mother, testified, the trial court found the defendant fit to stand trial.

Subsequently, Turner entered a negotiated plea of guilty to the attempted murder charge, in return for dismissal of the home invasion and burglary counts and dismissal of several unrelated charges. After admonishing the defendant, the trial court found that the plea was knowing and voluntary. The trial court entered a judgment of conviction for attempted murder. At the defendant's request, the trial court ordered a physical and mental examination of the defendant before sentencing. Subsequently, the defendant was sentenced to 20 years' imprisonment, from which sentence he appeals raising two issues: (1) whether the trial court erred at the fitness hearing by deferring to the psychiatric opinions as to the defendant's fitness and (2) whether the defendant's guilty plea was entered intelligently and voluntarily.

Initially, we note a possible waiver of the first issue due to the defendant's guilty plea. A voluntary guilty plea waives all errors, defects, and irregularities, including constitutional violations, which are not jurisdictional. (*People v. McKean* (1981), 94 Ill. App. 3d 502.)

However, resolution of this issue may be considered jurisdictional as a defendant's unfitness could render the proceedings void. (See *People v. Rockamann* (1979), 79 Ill. App. 3d 575.) Further, as resolution of this issue may affect the determination as to whether the defendant's guilty plea was voluntarily made, we address this issue.

A criminal defendant has a constitutional right not to be tried or convicted while he or she is incompetent to stand trial. (*People v. Lang* (1979), 76 Ill. 2d 311, *cert. denied* (1979), 444 U.S. 954, 62 L. Ed. 2d 326, 100 S. Ct. 433; *People v. Murphy* (1978), 72 Ill. 2d 421; *People v. Turner* (1980), 88 Ill. App. 3d 793.) The defendant is unfit if, because of a mental or physical condition, he or she is unable to understand the nature and purpose of the proceedings or to assist in his or her defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10; *People v. Lang* (1979), 76 Ill. 2d 311; *People v. Murphy* (1978), 72 Ill. 2d 421.) In making this determination, the court should consider whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding and whether the defendant has both a rational and factual understanding of the proceedings. (*People v. Turner* (1980), 88 Ill. App. 3d 793.) The same standards are used to determine whether a defendant is fit to enter a guilty plea; *i.e.*, the defendant must understand the nature of the charges and the purpose of the proceedings and must be able to assist in his or her defense. *People v. Heral* (1976), 62 Ill. 2d 329; *People v. Ryan* (1979), 74 Ill. App. 3d 886; *People v. Perkins* (1977), 53 Ill. App. 3d 412.

The law presumes that the defendant is fit to stand trial or to plead guilty. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10; *People v. Barnard* (1981), 95 Ill. App. 3d 1132.) However, where a *bona fide* doubt of the defendant's fitness has been raised, the State has the burden of proving, by a preponderance of the evidence, that the defendant is fit. (Ill. Rev. Stat. 1981, ch. 38, par. 104—11; *People v. Bilyew* (1978), 73 Ill. 2d 294; *People v. Turner* (1980), 88 Ill. App. 3d 793.) Both the initial determination as to whether a *bona fide* doubt as to the defendant's fitness exists and a finding of fitness after a hearing are matters for decision by the trial court, reversible only upon a showing of abuse of discretion. *People v. Dominique* (1980), 86 Ill. App. 3d 794; *People v. Rockamann* (1979), 79 Ill. App. 3d 575.

Here, the trial court ordered a fitness hearing on the defendant's motion. Doctors Hamann and Graybill, two psychiatrists, examined the defendant on October 4, 1980. Each examination consisted of an interview with the defendant. Both doctors found the defendant to be cooperative and oriented in time, place, and person. Although the

defendant was slightly lethargic with Doctor Hamann, he answered the doctor's questions readily and in a responsive manner, appeared alert, and displayed no unusual behavior. The defendant's speech was regular and his motor activity displayed no abnormality. While his thought processes were slow, with slight prodding, the defendant proceeded logically towards a goal. The defendant looked around frequently during Doctor Hamann's examination, but not to an extreme degree. During the interview with Doctor Graybill, the defendant was attentive; however, the defendant's demeanor was jocular, which Doctor Graybill attributed to a low intellectual capacity. The defendant told each doctor about his background and his family and their activities. He reported to both psychiatrists that he had been expelled from school in the eighth grade for running in the halls. He told Doctor Hamann that he had been charged with auto theft in the past.

Doctors Hamann and Graybill agreed that the defendant was of dull normal intelligence. Doctor Graybill characterized the defendant as not "playing with a full deck." He noted that the defendant was operating at a level of a 13 to 14-year-old and was not developed intellectually to the level that one would expect given the defendant's age, 19 years. However, both psychiatrists found no evidence of major thought or perceptual disorder or of major mental illness. Doctor Hamann stated that he had found no history of past major mental illness. Both doctors concluded that the defendant understood the nature and purpose of the charges and could cooperate with his attorney. According to the doctors, the defendant was generally able to observe, recollect, and relate the events leading to the crime, although he could not do so in minute detail and his memory was a bit hazy. Doctor Graybill felt that the defendant's memory was sufficient that he could take the witness stand, relate his version of the facts, and testify consistently with what he had told his attorney. The defendant knew that he was in trouble and that his conduct was illegal. He told Doctor Hamann that he might be imprisoned for 14 years. The defendant knew that he was charged with burglary and attempted murder and that he had been arrested for invading a home. He described to the doctors his entry into the house, his fight with one of the occupants, and his use of a knife in the fight. The only inadequacy Doctor Graybill found in the defendant's version of the event was that the defendant characterized the knife he used as small and he did not know how often he had cut the victim. In fact, the knife blade was 5-6 inches long, and the victim sustained 19 stab wounds.

Both psychiatrists noted that the defendant seemed somewhat preoccupied with the fact that a gun had been stolen from him and

with a fear of retaliation by his brother, appearing more concerned with that than with the charges. The defendant's stated motive for the offense was a need to obtain money to cover the cost of the stolen gun. Doctor Graybill felt that the defendant did not seem to recognize the seriousness of the charges, as his affect was inappropriate and his emotional responses were immature. The defendant was not well informed as to the functions and responsibility of various courtroom personnel, such as the court reporter, the clerk, and the bailiff. This caused Doctor Graybill to have some reservation as to the defendant's ability to fulfill all the fitness requirements if counsel were not present. The defendant also did not know his attorney's name and claimed not to have seen his attorney. However, the defendant did know that there was a prosecutor, a defendant, defense counsel, and a judge, and he could identify these persons. He roughly understood that the prosecutor presented a case and that the defense counsel would help to minimize the charges.

The defendant's mother, Annie Turner, testified that the defendant had been treated for mental illness in the past, having spent two months in the Singer Mental Health Center when he was 17 years old. According to Annie Turner, the defendant was sent to Singer pursuant to a court order after an incident in which the defendant had stabbed his sister. At the time, the defendant had been acting quite strange, claiming to see things, such as white people turning black, or one man jumping into the body of another man. The defendant's hospitalization was approximately two years prior to the fitness hearing, and the defendant had not been hospitalized within the six months prior to the hearing. Similarly, the defendant's mother had not heard the defendant report seeing people change within the six months prior to the hearing. However, the defendant did tell his mother that while in jail, he had spoken with his uncle and girl friend, both of whom were in Arkansas. The defendant also told his mother that people were bothering him in his cell and taking things from him, but he could not see them. According to the defendant's mother, the defendant did not seem to know exactly what happened which led to the charges. The defendant told her that a woman had spoken to him about the case and was going to help him get out of jail, but he claimed not to have a lawyer. The defendant's mother stated that she had seen the defendant regularly since he was put in jail, but she was unable to converse with him as he was constantly looking around. She reported that the defendant was literate and had finished grade school. The defendant had begun high school, but attended for only a short time and frequently was in trouble.

The defendant testified. He was not under the influence of medication, and he was not in pain at the time of the hearing. He recalled talking to two doctors in jail, but did not remember their names. He claimed to know their faces. However, when asked if the men in court were the men he had talked to, the defendant only remembered Doctor Hamann. The defendant knew that Doctor Hamann had spoken with him because Doctor Hamann was a doctor and wanted to see if the defendant had any problems. The defendant and Doctor Hamann discussed the fact that the defendant was in trouble. The defendant stated that he had answered and understood the doctor's questions. While remembering some of the questions, *e.g.*, the charges, the identity of defense counsel, the defendant did not recall Doctor Hamann asking questions about the court or its personnel.

The defendant stated that the court reporter was a lady, but he did not know a court reporter's function. According to the defendant, the clerk was "just like the judge" and handled papers. The defendant testified that he knew what a prosecutor was and what function the prosecutor performed. He knew that defense counsel's job was "talking to" the defendant. While not knowing what a jury was, the defendant stated that he knew what a trial was. According to the defendant, what happened in a trial was "[s]entence, what the sentence." The defendant indicated that he knew what the judge did, *i.e.*, "[g]ive me time." The defendant thought the possible outcome of his case would be that he would get a sentence, but he did not know how long the sentence would be. He testified that he could be cooperative with his attorney and that he understood that he faced serious charges.

The defendant reported that he told his mother that he had spoken to his grandfather while in jail, but defendant testified that he had not spoken to his grandfather recently. He further indicated that while he was in jail, he had not seen anyone jump out of anyone else. When asked by the court as to the identity of a baby his mother was holding, the defendant responded "I guess my sister," but did not know the baby's name. However, the defendant was able to name his aunt, who was also in the courtroom.

During argument, the defendant's attorney reported that the defendant did not respond to counsel and that counsel had interviewed the defendant twice, but the defendant denied having seen him.

■ Before ruling that the defendant was fit to stand trial, the trial court made several statements which the defendant contends indicate that the judge was abdicating his responsibility as the trier of

fact. The trial judge stated that "*** you have to figure out in your own mind, gentlemen, whether or not Henry Turner knows what he is charged with and can cooperate with his counsel ***." The court further stated "I don't believe I can substitute my opinion for the doctors in regard to his mental capacity. I do have some reservations when I hear his mother's testimony ***."

In a fitness hearing without a jury, the court is to determine, on the basis of the evidence before it, whether the defendant is fit to stand trial or to enter a guilty plea. (Ill. Rev. Stat. 1981, ch. 38, par. 104—16(d).) Because the issue of fitness is a question of constitutional dimension, the record must affirmatively show the exercise of judicial discretion in making the determination. (*People v. Greene* (1981), 102 Ill. App. 3d 639.) A trial court errs when it refuses to exercise its discretion in an area appropriate for its discretion. (See *People v. Queen* (1974), 56 Ill. 2d 560.) Psychiatric reports and opinions are not necessarily conclusive, even in making the threshhold determination as to whether a fitness hearing is required. (*People v. Thomas* (1969), 43 Ill. 2d 328.) Similarly, experts' opinions on the ultimate issue of fitness are not determinative. (See *People v. Bilyew* (1978), 73 Ill. 2d 294; *People v. Williams* (1980), 87 Ill. App. 3d 860.) The ultimate issue is to be resolved by the trial court. (73 Ill. 2d 294; 87 Ill. App. 3d 860.) Where the testimony is conflicting, the trial court, as the trier of fact, is to determine the credibility and weight to be given the testimony. *People v. Bilyew* (1978), 73 Ill. 2d 294; *People v. Jackson* (1980), 91 Ill. App. 3d 595; *People v. Williams* (1980), 87 Ill. App. 3d 860.

Here, despite the defendant's view that the trial court merely accepted the psychiatrists' ultimate opinions without further analysis, the record indicates otherwise. The trial court's other statements demonstrate its awareness of its responsibility. The court recognized that it was required to determine the facts and make the ultimate decision as to the defendant's fitness. The court indicated its concern with defense counsel's reports of the defendant's condition and noted defendant's youth, his lack of education, and his prior mental problems. However, the court considered the fact that both psychiatrists had testified to the defendant's ability to observe, recall, relate, and cooperate with counsel. The court stated that "I think he has the capacity to choose whether he wants to cooperate with his counsel in a meaningful way ***," and concluded that the defendant was fit "by applying the psychiatric opinions and *** [defendant's] own testimony *** to the statute ***." These statements indicate that the trial court was not relying solely on the opinions of Doctors Hamann and Graybill in reaching its decision.

■ The defendant questions the validity of the psychiatrists' opinions because of the doctors' lack of knowledge of the defendant's prior mental problems. The presentence report gave the defendant's past history in some depth. After an incident in June 1978, in which the defendant stabbed his sister, the defendant was referred to the Janet Wattles and Singer Mental Health Centers. He was diagnosed as a paranoid schizophrenic and hospitalized, receiving therapy and chemotherapy treatments. He was released after two months. In March 1980, the defendant's mother brought him to Janet Wattles again. A similar diagnosis was made at that time, but the defendant refused treatment. His family reported that his behavior was often bizarre. The defendant was frequently under the influence of alcohol and marijuana, using intoxicants on a daily basis. He failed all of his high school classes, and could not get along with the staff or other students. He also could not relate to the staff or his peers when he attempted to get job training through a CETA program. His work quality and attendance there were very poor. He failed the written test for admittance into the United States Marine Corps. He manifested some self-destructive behavior, having intentionally hit his head against a wall on two occasions and having attempted suicide in September 1980. Neither psychiatrist reported the defendant's history of mental illness. Doctor Hamann in fact maintained that the defendant had no such history. Apparently, neither doctor was aware that the defendant had attempted suicide shortly before the two examinations.

However, the trial court was presented with evidence as to some of the defendant's past mental problems through the testimony of his mother. She testified as to the defendant's prior hospitalization, hallucinations, inattentiveness, and poor performance in school. The trial court is charged with the responsibility of determining the weight and credibility to be given to expert testimony. (*People v. Bilyew* (1978), 73 Ill. 2d 294; *People v. Williams* (1980), 87 Ill. App. 3d 860.) Here, the trial court had sufficient information to evaluate the psychiatric testimony.

Because the trial court is in the best position to observe the defendant and the witnesses, the trial court's finding of fitness will not be reversed absent a clear abuse of discretion. (*People v. Jackson* (1980), 91 Ill. App. 3d 595; *People v. Rockamann* (1979), 79 Ill. App. 3d 575.) In our view, the evidence does not indicate such an abuse of discretion. Fitness refers only to a person's ability to function in the context of trial; it does not refer to sanity or competence in other areas. (*People v. Lang* (1979), 76 Ill. 2d 311, *cert. denied* (1979), 444 U.S. 954, 62 L. Ed. 2d 326, 100 S. Ct. 433; *People v. Murphy* (1978),

72 Ill. 2d 421; *People v. Bivins* (1981), 97 Ill. App. 3d 386.) So long as the defendant understands the nature and object of the proceedings and, in cooperation with counsel, can conduct a reasonable defense, the defendant is fit to stand trial or plead guilty even though his or her mind is otherwise unsound. (*People v. Heral* (1976), 62 Ill. 2d 329; *People v. Bivins* (1981), 97 Ill. App. 3d 386; *People v. Williams* (1980), 87 Ill. App. 3d 860.) Absent other indications of unfitness, the mere fact that the defendant has some mental disorder or requires psychiatric treatment does not render him or her unfit. (62 Ill. 2d 329; 97 Ill. App. 3d 386; see *People v. Chambers* (1976), 36 Ill. App. 3d 838.) Therefore, defendant could be found fit despite the fact that he was diagnosed as a paranoid schizophrenic and that he had a history of mental treatment. (*People v. Tilson* (1982), 108 Ill. App. 3d 973; *People v. Dominique* (1980), 86 Ill. App. 3d 794.) The defendant's past hospitalization does not indicate that his condition continued to the time of the hearing. (86 Ill. App. 3d 794; see *People v. Bivins* (1981), 97 Ill. App. 3d 386.) The defendant's suicide attempts do not compel a finding of unfitness. (See *People v. Heral* (1976), 62 Ill. 2d 329.) A low intellectual capacity does not necessarily render the defendant incompetent. (*People v. Perkins* (1977), 53 Ill. App. 3d 412; see *People v. Murphy* (1978), 72 Ill. 2d 421.) A defense attorney's assertion that the defendant is not fit does not suffice to create a *bona fide* doubt of fitness. *People v. Jackson* (1980), 91 Ill. App. 3d 595; *People v. Dominique* (1980), 86 Ill. App. 3d 794; *People v. Ryan* (1979), 74 Ill. App. 3d 886.

The crucial determination is whether the defendant understands the proceedings and can cooperate with counsel. (See *People v. Heral* (1976), 62 Ill. 2d 329; *People v. Bivins* (1981), 97 Ill. App. 3d 386.) The finding that defendant was able to do so is supported by the record. Defendant's testimony at the fitness hearing was primarily coherent and responsive. (See *People v. Riley* (1980), 89 Ill. App. 3d 438; *People v. Dominique* (1980), 86 Ill. App. 3d 794.) The trial court may rely on its own observations of the defendant as a factor in reaching its decision. (*People v. Dominique* (1980), 86 Ill. App. 3d 794.) The defendant remembered his discussion with Doctor Hamann and knew why Doctor Hamann had interviewed him. While uncertain of the functions of the court reporter and clerk, the defendant basically was aware of the duties of the major court personnel, specifically the prosecutor, defense counsel, and the judge. He stated that he understood the seriousness of the charges and could cooperate with counsel. Defendant's inability to remember his attorney's name does not indicate unfitness. (*People v. Richardson* (1978), 61 Ill. App. 3d

718.) The psychiatric testimony, while not indicative of an intense background examination, revealed that the defendant was able to describe the circumstances of the offense. Therefore, no abuse of discretion appears.

The second issue is whether the defendant's guilty plea was entered intelligently and voluntarily.

In order to appeal from a conviction based on a guilty plea, the defendant must have filed, within 30 days of sentencing, a written motion in the trial court to withdraw the plea and vacate the judgment. (87 Ill. 2d R. 604(d).) The motion must specify the grounds on which it is based; matters not included in the motion are waived. (87 Ill. 2d R. 604(d).) While the defendant filed a timely motion to withdraw his plea, he subsequently decided to withdraw the motion and file a notice of appeal. Later, the defendant attempted to reinstate the motion. The trial court denied the motion, and the defendant filed a second notice of appeal.

Proper filing of a notice of appeal causes the jurisdiction of the reviewing court to attach instanter and deprives the trial court of jurisdiction to reconsider the merits of the issues on appeal. (*People v. Carter* (1980), 91 Ill. App. 3d 635; *People v. Baker* (1980), 85 Ill. App. 3d 661.) Therefore, after defendant filed his first notice of appeal, the trial court lacked jurisdiction to permit the defendant to reinstate his motion to withdraw the plea and similarly lacked jurisdiction to deny the motion. The case must be viewed as if there were no motion to withdraw the plea.

■ Failure to comply with Supreme Court Rule 604(d) generally requires dismissal of the defendant's appeal. (*People v. Brownell* (1980), 86 Ill. App. 3d 697; *People v. Meacham* (1977), 53 Ill. App. 3d 762.) However, an exception is made to the requirement of a Rule 604(d) motion in situations where the failure to file the motion constituted ineffective assistance of counsel. (*People v. Newbolds* (1981), 98 Ill. App. 3d 1018; *People v. Brownell* (1980), 86 Ill. App. 3d 697.) Because the effective assistance of counsel is denied when defense counsel fails to perfect an appeal, the actions of the defendant's attorney in withdrawing the motion to withdraw defendant's guilty plea and filing of a notice of appeal constituted ineffective assistance of counsel; therefore, the merits of the defendant's objections to the plea should be considered. *People v. Brownell* (1980), 86 Ill. App. 3d 697; *People v. La Pointe* (1980), 85 Ill. App. 3d 215, *rev'd on other grounds* (1981), 88 Ill. 2d 482; *People v. Meacham* (1977), 53 Ill. App. 3d 762.

For a guilty plea to be constitutionally valid, the record must affirmatively show that the plea was intelligent and voluntary. (*People*

*v. McCoy* (1979), 74 Ill. 2d 398; *People v. Douthit* (1977), 51 Ill. App. 3d 758.) To implement this constitutional requirement, the trial court must substantially comply with Supreme Court Rule 402 (87 Ill. 2d R. 402) before accepting a guilty plea. (74 Ill. 2d 398; *People v. Krantz* (1974), 58 Ill. 2d 187.) Under Supreme Court Rule 402, the court must inform the defendant of the nature of the charge, the minimum and maximum possible sentences, including any penalty due to prior convictions, that the guilty plea waives all trial rights, and that the defendant has the right to plead not guilty. The court also must confirm the terms of the plea agreement and determine that there is a factual basis for the plea. (87 Ill. 2d R. 402.) Generally, substantial compliance with Supreme Court Rule 402 indicates that the plea was intelligent and voluntary. *People v. McCoy* (1979), 74 Ill. 2d 398.

■ The trial court admonished the defendant at length as to the matters required by Supreme Court Rule 402. However, the defendant asserts that his guilty plea was not voluntarily and knowingly made as he was not aware that he was relinquishing his right to a jury trial and as he misunderstood the possible sentencing alternatives. According to the defendant, these problems were exacerbated by his lack of intellectual capabilities.

A waiver of the right to a jury trial must be made understandingly and expressly. (See *People v. Anderson* (1973), 10 Ill. App. 3d 558; *People v. Rambo* (1970), 123 Ill. App. 2d 299.) Whether a jury waiver was made knowingly and understandingly depends on the particular facts of each case. (See *People v. Durham* (1974), 23 Ill. App. 3d 737; 10 Ill. App. 3d 558; 123 Ill. App. 2d 299.) Here, at the fitness hearing, the defendant had testified that he did not know what a jury was. However, at the later hearing when the defendant's plea was entered, the court questioned the defendant as to his understanding of his rights. The court advised the defendant that he had a right to a jury of 12 people to decide if he were guilty. The court explained the various trial rights, including confrontation, cross-examination, and the presumption of innocence. The court told the defendant that he could choose to be tried before the court instead of a jury and that the only difference would be that, in a bench trial, the State was required to convince only one person, instead of 12, of the defendant's guilt. The court explained that it would sentence the defendant regardless of the type of trial. The defendant indicated that he understood each of these admonitions. This indicates that, despite the defendant's original lack of understanding of the right to a jury trial, he understood at the time he entered his plea. (See *People v. Ryan* (1979), 74 Ill. App. 3d 886; *People v. Cyburt* (1977), 50 Ill. App. 3d

414; *People v. Anderson* (1973), 10 Ill. App. 3d 558.) This case is distinguishable from *People v. Turner* (1967), 80 Ill. App. 2d 146, cited by the parties, as in *Turner*, after learning that the defendant did not know what a jury trial was, the court instructed defense counsel to explain it; however, the court neither advised the defendant further nor ascertained whether counsel actually had advised the defendant of his jury rights. 80 Ill. App. 2d 146.

The defendant read and signed a printed form indicating his waiver of jury trial and his guilty plea. Defendant's literacy is not determinative of the voluntariness of his plea. (*People v. Turner* (1967), 80 Ill. App. 2d 146.) The mere fact that he signed the waiver form also is not sufficient, absent a showing that he read the form and understood what it meant. (*People v. Spencer* (1974), 16 Ill. App. 3d 899; *People v. Rambo* (1970), 123 Ill. App. 2d 299.) However, the defendant read the form. He stated that he knew what he had read and realized that signing the form meant that he was pleading guilty to attempted murder and giving up his right to a jury trial.

█ The court advised the defendant, and the defendant indicated that he understood, that the court had no choice as to whether to sentence defendant to a prison term, it was just a matter of the length of the term, that the sentence could be within a range of 6-30 years, that an extended term was a possibility, that the sentence could not be less than six years, and that the time the defendant had spent in jail would be credited toward his sentence. However, there was a potential for confusion as the plea agreement provided that the defendant would plead guilty to attempted murder and several other charges would be dismissed, and the court believed that it was required to explain the potential sentences for all of the offenses.

The court first admonished the defendant as to the sentencing alternative for attempted murder, telling the defendant of the potential for a fixed term of not less than six and not more than 30 years and providing the defendant with an example of a possible sentence. The court advised the defendant of the possibility of an extended term, consecutive term, and sentencing under the Habitual Criminal Act, but noted that none of these would apply, unless the court found the crime to have been exceptionally brutal. In that case, the court told the defendant that an extended term was possible, and that the sentence could be up to 60 years. The defendant indicated that he understood each of these admonitions. The court indicated that alternative dispositions were not available, but that the defendant would have to be sentenced to the penitentiary for not less than six years. The court explained the possibility of a fine or restitution. The defendant indi-

cated that he understood each of these admonitions. The court advised the defendant of the potential for obtaining good conduct days, giving an example, and of the three-year mandatory supervised release period. The defendant stated that he understood. The court then described the possible sentencing alternatives for each of the other offenses in some detail.

The defendant's position is that these admonitions were overly complex and confusing. While there was some possibility of confusion here, the trial court advised defendant, both before and after reciting the sentencing alternatives, that the defendant would be sentenced only for attempted murder. The defendant indicated that he understood. It is notable that the defendant himself requested that the court explain the charges for two of the offenses which were being dismissed. Further, the court repeatedly ascertained that the defendant understood what was happening, and told the defendant to ask questions if he did not understand. The defendant indicated that he had no questions. These statements reduced the possibility of confusion. The court's remarks must be read in a practical and realistic manner and are sufficient if an ordinary person in the defendant's circumstances would understand the court's advice as conveying the necessary information. (*People v. Hopson* (1981), 101 Ill. App. 3d 564; *People v. Wilcoxen* (1974), 23 Ill. App. 3d 377.) In any event, as there was no agreement as to the sentence, it was proper for the court to advise the defendant fully as to the potential sentence. See *People v. McCullough* (1970), 45 Ill. 2d 305.

■ A guilty plea is not voluntary and intelligent if the plea was entered on the basis of a misapprehension of law or fact or a misrepresentation by defense counsel, the State's Attorney, or someone else in authority. (*People v. Benedetto* (1981), 102 Ill. App. 3d 10; *People v. Ryan* (1979), 74 Ill. App. 3d 886.) The defendant bears the burden of demonstrating any alleged misunderstanding or misrepresentation. (*People v. Hale* (1980), 82 Ill. 2d 172; *People v. Douthit* (1977), 51 Ill. App. 3d 758.) No misrepresentation is alleged here. However, the defendant claims that he was unaware of the possible sentence, as demonstrated by his statement to Doctor Hamann during the presentence examination that the defendant thought he would be sentenced to six years and would be released in three years. While a guilty plea may be involuntary due to a misapprehension as to the sentencing alternatives if the defendant actually was unaware of the possible punishment (*People v. Hale* (1981), 96 Ill. App. 3d 187, *cert. denied* (1982), 455 U.S. 953, 71 L. Ed. 2d 669, 102 S. Ct. 1459; *People v. Lundeen* (1977), 55 Ill. App. 3d 799), where, as here, the defendant

has been admonished thoroughly, a guilty plea is not revocable merely because the defendant subjectively believed that he or she would receive a certain sentence but did not. (See *People v. Ryan* (1979), 74 Ill. App. 3d 886; *People v. Burrell* (1978), 66 Ill. App. 3d 806.) This is especially true where there is no reasonable justification for the defendant's mistaken subjective impression. (See *People v. Hale* (1980), 82 Ill. 2d 172; *People v. Douthit* (1977), 51 Ill. App. 3d 758.) No such justification is shown here.

There also is no indication that the defendant was not fit to enter a guilty plea. Although the trial judge had to tell the defendant to look at him on a couple of occasions and gave the defendant the opportunity to discuss his plea with his family, throughout the hearing on the plea, the defendant's answers were lucid and he indicated an understanding of the proceedings and their consequences. (See *People v. Cyburt* (1977), 50 Ill. App. 3d 414.) Defendant had received a full hearing on his fitness and had been found to be fit. (See *People v. Bennett* (1980), 82 Ill. App. 3d 596.) A presentence psychiatric examination, made subsequent to the defendant's plea, indicated that the defendant continued to be competent. Under these circumstances, the defendant's plea was entered voluntarily and intelligently.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

LINDBERG and NASH, JJ., concur.