THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY M. SMITH, Defendant-Appellant.

Third District    No. 3—87—0727

Opinion filed January 26, 1989.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Masters, State's Attorney, of Joliet (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Following a jury trial, the defendant, Ricky Smith, was found guilty of murder and sentenced to 30 years in prison. Prior to trial, the defendant had filed motions to determine his competency to stand trial and to suppress his confession statement, both of which were denied.

On appeal, the defendant first contends that the trial court erred in finding the defendant fit to stand trial where the evidence of fitness was outweighed by the evidence of unfitness and that certain post-arrest statements made by the defendant should have been suppressed as involuntary under the totality of the circumstances. In the alternative, he contends that either the cause should be remanded for resentencing because the trial court erroneously believed the defendant had to be sentenced as an adult or the trial court abused its discretion in sentencing the defendant to 30 years' imprisonment.

The record reveals that the victim, Louis Zamudio, was shot and killed on the evening of June 26, 1986. On that evening, Louis received a phone call from his brother asking him to go to the home of John Dean to deliver a message. Louis and his mother then proceeded to drive by truck to the Dean residence. In the vicinity of the Dean home, Louis and his mother stopped the truck to ask for directions from a group of people standing along the roadway. A short time later Louis and his mother arrived at the Dean residence. They visited briefly with Mr. Dean in front of his house. During the visit, Mr. Dean and Louis' mother heard what sounded like four or five firecrackers going off. They then saw Louis fall to the ground. He had been shot in the back and heart.

On June 29, 1986, based on information supplied by the defendant's acquaintance, Mickey Smith, the defendant was arrested in connection with the shooting murder of Louis Zamudio. Mickey Smith had also retrieved the murder weapon, which contained the defendant's fingerprint.

At the time of the defendant's arrest, Officer Robert Kerwin told the defendant's brother to go home and tell the defendant's mother that the defendant had been charged with murder and that she should come down to the police station as soon as possible. The defendant was then taken to the Joliet police department, where Officers Allen Horvath and Steve Jaeger questioned the defendant concerning the shooting of Louis Zamudio. After the officers read the defendant his rights, he agreed to talk with them further and stated that he shot the victim, but it was an accident. He said that on the evening of the shooting he was standing across from the Dean house with Mickey

Smith when an Hispanic male and female in a red pickup truck stopped and asked them directions to Dean's house. The defendant directed them across the street. Mickey then told the defendant that the male in the truck was Adolph, a Latin King gang leader.

After the defendant saw the occupants of the truck enter Dean's house, he walked toward a nearby housing project, where he again encountered Mickey Smith, who was now carrying a .22 caliber rifle. The defendant told the officers that Mickey said he was going to get the Latin King because it was Adolph. Mickey then dropped the gun, picked it up and handed it to the defendant. The defendant told the officers that Mickey then left the area.

The defendant also told the officers that he saw the Hispanic male, who had been in the pickup truck, standing in front of Dean's house. The defendant started to point the gun at the man. The defendant's finger touched the trigger and the gun accidentally fired. He said he heard more than one pop but could not recall how many times the gun fired. He threw the gun in some bushes and walked away.

Prior to trial, defense counsel filed a motion to determine whether the defendant was fit to stand trial. Two qualified psychiatrists were appointed by the court to examine the defendant. Dr. Kruglik, testifying on behalf of the State, said that the defendant was educably mentally retarded. It was his opinion that this mild retardation would not prevent the defendant from observing, recalling and relating past experiences. Dr. Kruglik also testified that he believed the defendant could aid in the preparation of his defense if counsel were patient with him and used basic language. Dr. Kruglik found no evidence that the defendant was schizophrenic. Dr. Guschwan, the defense psychiatrist, testified that the defendant was schizophrenic and that his ability to assist in his defense would be severely limited due to his preoccupation with hallucinations and depression. Dr. Guschwan recommended that the defendant be hospitalized for a few weeks of evaluation and treatment.

After evaluating the testimony, the trial judge found the defendant fit to stand trial. The judge found Dr. Kruglik's testimony to be more credible because Dr Kruglik spent more time with the defendant and was more patient. The judge determined that Dr. Guschwan had not been patient enough with the defendant. Furthermore, the judge found Dr. Kruglik's testimony to be supported by the testimony of Officers Horvath and Jaeger, both of whom testified that the defendant appeared to understand and was able to communicate and recall past events.

The defendant contends that the trial court erred in finding he was fit to stand trial because the evidence of unfitness outweighed the evidence of fitness. The defendant argues that the same evidence underlay both of the expert opinions in this case and that that underlying evidence demonstrated that the defendant was unfit to stand trial. We disagree.

■■ ■ If a question of fitness to stand trial is raised, the State must prove by a preponderance of the evidence that the defendant is fit. (Ill. Rev. Stat. 1987, ch. 38, par. 104—11(c).) The crucial determination is whether the defendant understands the proceedings and can cooperate with counsel. (*People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.) Because the trial court is in the best position to observe the defendant and witnesses, the trial court's finding of fitness will not be reversed absent a clear abuse of discretion. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 443 N.E.2d 1167.) Where the expert testimony is in conflict, the trial court is to determine the credibility and weight to be given the testimony. *People v. Bilyew* (1978), 73 Ill. 2d 294, 383 N.E.2d 212.

■ In the instant case, we find no abuse of discretion. The trial judge properly weighed the credibility of the conflicting expert testimony. Further, fitness refers only to a person's ability to function in the context of trial, it does not refer to sanity or competency in other areas. The defendant could be found fit despite the fact that he was diagnosed as schizophrenic and had a low mental capacity. (See *People v. Turner* (1982), 111 Ill. App. 3d 358, 443 N.E.2d 1167.) The trial judge relied on the testimony of Dr. Kruglik that the defendant understood the nature of the pending charges and knew that there was a question as to whether he could help defense counsel prepare a defense. Dr. Kruglik's observations were properly based on his interview with the defendant, during which time the defendant was able to relate past events and circumstances.

Next, the defendant contends that his post-arrest statement should have been suppressed as involuntary under the totality of the circumstances. He argues that taking into consideration his youth, his mental retardation, his lack of experience with the criminal justice system and the fact that his mother was not present during interrogation, he did not make a voluntary, knowing, intelligent waiver of his *Miranda* rights.

Robert Sonter, a clinical psychologist, testified at trial that he interviewed the defendant and gave him a battery of tests. Mr. Stoner testified that he administered the revised Weschler Intelligence Test and determined that the defendant's full scale IQ of 49 placed him in

the mildly mentally retarded range. Mr. Stoner stated that he did not believe the defendant had the ability to knowingly and understandingly waive his rights without an attorney.

▪ The determination of whether an accused has waived his *Miranda* rights depends on whether the defendant in fact knowingly and voluntarily waived those rights. (*People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179.) The inquiry as to whether the defendant in fact knowingly and voluntarily waived those rights focuses on the totality of the circumstances surrounding the interrogation. (*People v. Racanelli* (1985), 132 Ill. App. 3d 124.) Pertinent factors to consider are the defendant's age, intelligence, prior experience with the criminal law, and emotional stability. However, when regarding the totality of the circumstances, both the characteristics of the accused and details of the interrogation must be considered. *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.

▪ Regarding the details of the interrogation in the instant case, the record reveals that Officers Horvath and Jaeger introduced themselves to the defendant and informed him of the charges against him. Officer Horvath then advised the defendant of his *Miranda* rights as set forth on the form. The defendant replied "yes" when asked if he understood the rights; yet still he wanted to talk with the officers. Officer Horvath then asked the defendant to put his initials next to the question if his answers were "yes." The defendant appeared to read the form and then signed it.

Thereafter, the defendant made an oral statement and a subsequent tape-recorded statement. The whole process of questioning the defendant and taking the statements took approximately one hour and a half. According to Officers Horvath and Jaeger, during this time the defendant never requested his mother or a lawyer. The officers testified that the defendant appeared to be a normal 16-year-old male and did not say or do anything to cause them to believe that he was of diminished mental capacity. The defendant appeared to understand what he was asked, and his answers were responsive to the questions. Further, the defendant asked for clarification when he didn't understand directions, which was a normal occurrence in interrogations.

We find that there is no indication from the evidence adduced in regards to the interrogation that the defendant in actuality failed to understand his rights.

▪ The police are not required to conduct a mental examination of an accused, with a view to ascertain his ability to comprehend the rights involved as a prerequisite to accepting a waiver. (*People v.*

*Cooper* (1975), 30 Ill. App. 3d 326, 332 N.E.2d 453.) Further, the fact that a defendant is young and of a diminished mental capacity does not, *ipso facto*, render a confession involuntary if it is otherwise voluntary. The crucial test is whether, considering the age, background and intelligence of the defendant, the words used by the police officer to inform the defendant of his rights impart a clear, understandable warning of all of his rights. *People v. Baker* (1973), 9 Ill. App. 3d 654, 292 N.E.2d 760.

We find in the instant case that the trial judge used the necessary special care in scrutinizing the record required in this case involving the 16-year-old defendant with a diminished mental capacity. (See *People v. Simmons* (1975), 60 Ill. 2d 173, 326 N.E.2d 383.) The judge, in denying the defendant's motion to suppress, specifically stated, "[T]he test I have to use is was it a knowing, intelligent, voluntary waiver *** taking into account his mental capacity *** age *** was [*sic*] the parents properly notified, and *** whether an attorney was present. Taking into account all of these factors, I find this was a knowing, intelligent, voluntary waiver of his rights."

■■ ■ It is clear that the judge considered the defendant's age and mental capacity as well as the fact that neither a lawyer nor the defendant's mother was present during the interrogation. The judge was convinced that the defendant's confession was voluntary and that the defendant made a knowing waiver of his rights. Where the trial court, applying the proper legal standard, finds that a statement was made knowingly, intelligently and voluntarily, review is limited to whether that finding is contrary to the manifest weight of the evidence. (*People v. Racanelli* (1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179.) We do not find the judge's decision to be contrary to the manifest weight of the evidence in light of the circumstances surrounding the interrogation. We reiterate the absence of police coercion in addition to the evidence that the defendant appeared to actually understand his rights.

In so deciding, we acknowledge that the defendant argues that in assessing the voluntariness of the confession, the trial judge erred by comparing the defendant's behavior with that of a person of normal intelligence. The defendant's contention is without merit. The record clearly reveals that the judge merely explained that intelligent people waive rights and waiving rights is never a wise decision but that whether it was a wise decision is not the test to be applied.

We also acknowledge that the defendant argues that in violation of section 3—2(1) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 703—2(1)), the police failed to make a reasonable attempt to

notify his mother that he had been taken into custody. The defendant contends that the failure to make a reasonable attempt to notify the parent is a factor to be considered in assessing the voluntariness of the confession.

We note that the trial court judge found that the police made a reasonable attempt to notify the defendant's mother. The record supports the judge's assessment. The police directed the defendant's older brother to go home and tell the defendant's mother that the defendant had been arrested and that she should come down to the station. Furthermore, the evidence showed that the mother did in fact arrive at the police station while the defendant was being interrogated. Actual notice was not mandated by the statute. *People v. Baxtrom* (1980), 81 Ill. App. 3d 653, 402 N.E.2d 327.

Next, the defendant argues in the alternative that the cause should be remanded for resentencing because the trial court erroneously believed that the defendant had to be sentenced as an adult and did not advise the defendant that it was authorized, if given the defendant's consent, to impose a disposition under the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—1 *et seq.*). We disagree.

It is undisputed in this case that the defendant could have been sentenced either under the Juvenile Court Act or under the Unified Code of Corrections (Ill. Rev. Stat. 1985 ch. 38, par. 1005—8—1). However, we find that the trial court judge properly exercised his discretion in sentencing the defendant under the Unified Code of Corrections.

A trial judge is presumed to know the law. (*People v. Gilbert* (1977), 68 Ill. 2d 252, 369 N.E.2d 849.) This presumption is rebutted only when the record affirmatively shows the contrary. *People v. Wallenberg* (1962), 24 Ill. 2d 350, 181 N.E.2d 143.

The defendant fails to show that the trial judge was under a misapprehension of the law. Presumably the judge considered the sentencing alternatives under the Juvenile Court Act. We find that his statement that "probation does not apply" merely indicates his rejection of proceeding pursuant to that act. Additionally, we note that proceeding pursuant to the Juvenile Court Act was not one of the sentencing alternatives urged by defense counsel.

The defendant's final contention is that in the event this court affirms his conviction and declines to remand for resentencing, it should reduce the defendant's sentence. The defendant argues that the trial court abused its discretion in sentencing him to 30 years' imprisonment in light of his youth, his mental retardation, his lack of prior criminal history, and his potential for rehabilitation.

The sentencing comments of the trial judge indicate that the only applicable statutory aggravating factor was that the sentence was necessary to deter others from committing the same crime. On the other hand, certain mitigating factors were present in this case. At the time of the sentencing the defendant was 17 years of age, had no prior criminal record and was mentally retarded. Also, his character and attitude indicated that he was unlikely to commit another crime.

The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. 1, §11.) The constitutional mandate requires the trial court to actually consider rehabilitation as an objective of the sentence. (*People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491.) We note that sentences have been reduced on the basis of rehabilitative potential where a defendant came from a poor social environment and had a limited education (see *People v. Kosanovich* (1979), 69 Ill. App. 3d 748, 387 N.E.2d 1061), and where the defendant was 16 at the time of the offense and had no prior criminal record (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606).

In the light of the circumstances presented, particularly the defendant's age, lack of a prior criminal record and mental retardation, we find that the defendant's rehabilitative potential was not given adequate consideration. We also note that the sentencing judge suggested that the offense was gang related when there was no evidence that the defendant intended to shoot the victim because he was a member of a gang. Accordingly, we remand the cause for reconsideration of the sentence.

The judgment of the circuit court of Will County is affirmed except as to the sentence; we remand the cause for resentencing consistent with the views expressed in this opinion.

Affirmed in part; remanded for resentencing.

WOMBACHER and BARRY, JJ., concur.