THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD STEPHENSON, Defendant-Appellant.

Fourth District    No. 4—89—0708

Opinion filed June 7, 1990.

Richard D. Frazier, D. Peter Wise, and Michael B. Metnick, all of Metnick & Barewin, of Springfield, for appellant.

Charles Colburn, State's Attorney, of Jacksonville (Kenneth R. Boyle, Robert J. Biderman, and J.A.C., Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant appeals his sentence for attempt (criminal sexual assault). We affirm.

On August 22, 1989, defendant was charged by information with two counts of criminal sexual assault in violation of section 12—

13(a)(2) of the Criminal Code of 1961 (Criminal Code). (Ill. Rev. Stat. 1987, ch. 38, par. 12—13(a)(2).) A preliminary hearing was held on October 24, 1989, at which George Bengel, the program coordinator for the Jacksonville Area Association for Retarded Citizens (JAARC), testified that the victim was a 23-year-old, mentally retarded woman who lived at a home run by JAARC. Bengel also testified that defendant was a "relief home manager" who supervised retarded persons living at a JAARC home. On August 14, 1988, a "home manager," Ron Cooley, found defendant and the victim naked together on a bed. Defendant later confessed to having sexual intercourse with the victim.

Bengel also testified, without objection, that he had been advised that the victim's approximate mental age was three to five years old. Later at the hearing, the State again asked Bengel about the victim's mental age:

"Q. [By prosecutor:] Now, you've stated before that you have learned [the victim] has been diagnosed as having a mental age of three to eight years old?

A. [By Bengel:] Yes.

Q. Have you had a chance to be around young children before?

A. Yes.

Q. And does that appear to you the way [victim] acts?

[Defense attorney]: Objection; That's pure speculation.

THE COURT: Overruled.

Q. Does that appear to you the way [the victim] acts?

A. Yes."

Defense counsel subsequently cross-examined Bengel, but failed to question him about the diagnosis of the victim's mental age, or Bengel's opinion that he believed the victim acted like a young child. The court found probable cause to exist, and defendant subsequently entered a plea of not guilty.

On January 9, 1989, defendant agreed to plead guilty to attempt (criminal sexual assault) in violation of sections 8—4(a) and 12—13(a)(2) of the Criminal Code. (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 12—13(a)(2).) During the change of plea hearing the court took judicial notice of the testimony presented at the preliminary hearing, including the testimony concerning the victim's mental age. The court asked defense counsel if he had any objection to this judicial notice, and defense counsel replied, "No, no objection." The testimony presented at the preliminary hearing became the factual basis for defendant's guilty plea.

On May 4, 1989, a sentencing hearing was scheduled, but defendant's motion to strike the victim-impact statement and police report was heard instead. One of defendant's complaints concerned a statement in the police report, which referred to the victim's mental age as being three to five years. The court noted that the victim's mental age had been made part of the factual basis for the plea through testimony by a JAARC representative and denied the motion to strike the statement.

On July 21, 1989, a sentencing hearing was held at which defendant presented evidence in mitigation. Defendant first presented Fred Hammond, the director of chaplains and volunteer services at the Jacksonville Development Center. Hammond had counseled defendant several times following defendant's arrest and had learned that defendant was "mildly on the borderline of retardation" and had an abnormally large sexual drive. Hammond further testified that he believed defendant's sexual drive had been diminished significantly through a synthetic progesterone (Depo-Provera) treatment program.

After several other witnesses, including defendant's wife, defendant called Dr. Phillip Bornstein, a psychiatrist who had examined defendant for the purpose of supplying the trial court with sentencing information. Dr. Bornstein was of the opinion that defendant has very low-normal or borderline intelligence and a "much higher than average" sexual drive, shows remorse for his act, and is nonviolent. Dr. Bornstein concluded that the only way to prevent this type of incident from recurring would be to permanently incarcerate defendant in a facility without women. However, Dr. Bornstein also suggested less restrictive ways to treat defendant, including counseling with Dr. Hammond and the progesterone treatment. Dr. Bornstein noted a sentencing alternative used in Springfield, Illinois, that consisted of a brief period of incarceration followed by counseling and progesterone treatments. Dr. Bornstein was not in favor of a long period of incarceration, but Dr. Bornstein is in general opposed to incarceration and retributive punishment of sex offenders.

The State presented no witnesses at the sentencing hearing, but argued that a term of imprisonment was necessary to punish the defendant and deter him and others from committing similar crimes, especially since the community in which defendant lived, Jacksonville, had a large population of disabled individuals. The defense urged the court to follow Dr. Bornstein's suggestion and sentence defendant to a brief period of incarceration, followed by probation and continued counseling and progesterone treatments.

The court sentenced defendant to six years' imprisonment and

gave a detailed explanation. The court gave considerable weight to Dr. Bornstein's testimony, but noted that defendant was a "sexual opportunist," whose increasing age and progesterone treatment would not absolutely guarantee the diminution of his sex drive. Progesterone treatment is controversial medication under the facts of this case as the injections are mainly successful in the treatment of pedophiles. The court also noted defendant's lower than normal mental ability and the fact that both defendant and the victim initiated the sexual contact at different times. Finally, the court noted that defendant had been a successful father, had been married for 30 years, was regularly employed, and was very remorseful.

The court then went through the list of statutory aggravating factors as listed under section 5—5—3.2 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2). The court noted the first statutory factor, that defendant's conduct caused or threatened serious harm (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(1)), applied in the instant case. The court inferred that anyone with a mental age of three who had been put through this situation would suffer great emotional harm. The court was quick to note that it was not referring to physical harm. The court also found the seventh statutory factor to apply, i.e., the need to deter defendant and others from committing the same crime (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(7)). The court noted the large community of mentally handicapped people in Jacksonville and stated that general deterrence was an important factor in this case.

The court then considered the ninth statutory factor, that the offense was committed against a physically handicapped individual (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(9)). The court noted that while the victim did not have a physical handicap, the victim was mentally handicapped. The court took the victim's mental handicap into consideration "probably in the abuse of trust areas." The court went on to consider the thirteenth statutory factor, that defendant held a position of trust or supervision in relation to a victim under 18 years of age (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(13))—the court initially suggested it considered this as an aggravating factor.

The court then considered the statutory factors in mitigation as listed in section 5—5—3.1 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1). The court placed great weight on the second statutory factor, that defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1(a)(2)). However, the court believed defendant knew his conduct was wrong. The court also found the

ninth and tenth statutory factors in mitigation applicable, that defendant had the character and attitude that he would be unlikely to commit another crime, and that defendant was particularly likely to comply with terms of probation. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—3.1(a)(9), (a)(10).) The court rejected all other statutory mitigating factors, and specifically rejected the seventh, that defendant's criminal conduct was the result of circumstances unlikely to reoccur (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1(a)(7)). The court found that defendant needed to be in a controlled environment, and noted that, in prison, defendant would continue to receive progesterone treatments and counseling. The court concluded that the main aggravating factor was the abuse of trust, given the fact that defendant initiated some of the incidents. The court explained that the length of the sentence was due to retribution and deterrence, and not rehabilitation, although rehabilitation was a part of the sentence.

After the court pronounced sentence, defense counsel asked to make a record for appeal and objected to several of the factors the court relied on in fashioning its sentence. The defense first objected to the court's use of the victim's mental handicap. Defendant argued that the ninth statutory factor, that the victim has a physical handicap, does not include mental handicap. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(9).) The court noted that it did not rely on the ninth statutory factor, but instead relied only on the victim's mental handicap.

Defendant also objected to the court's use of section 5—5—3.2(a)(13) as an aggravating factor, the abuse of trust. Defendant stated that the court improperly relied on subsection (13) because the victim was over the age of 18. The court admitted "rewriting" subsection (13), and stated that whether the legislature had meant biological age or mental age was up to a higher court to decide. The court continued:

"I would be shocked and appalled if this court couldn't consider the mental age of this victim at three as being an aggravating factor, no matter what her age may be, whether it's 22 or 50. And if [subsection (13)] doesn't provide for an aggravating factor, I find that's a salient factor anyway, whether or not the general assembly considered it. It's a factor that is involved implicitly in this particular offense. It's one of the elements of the offense, also, that the, she could not consent because of her mental age, and the court so considers it."

Defendant filed a timely motion to reconsider, which was heard on August 29, 1989. Defendant orally amended his motion to argue that

the court could not consider the victim's mental handicap as an aggravating factor because it was inherent in the offense. The court acknowledged that this was in fact an element in the offense, but also considered it an aggravating factor for the reason that the victim could not defend herself because, mentally, she was a little child.

The court denied defendant's motion to reconsider, and defendant filed a timely notice of appeal. On appeal, defendant argues (1) the court erred in considering the victim's mental handicap as an aggravating factor; (2) the court erred and violated defendant's due process rights by finding as an aggravating factor that the victim's mental age was approximately that of a three-year-old; (3) the trial court erred in finding as an aggravating factor that defendant held a position of trust or supervision in relation to a victim under 18 years of age; and (4) the trial court failed to consider the rehabilitative potential of defendant, and placed excessive emphasis on retribution and deterrence.

Defendant's first issue on appeal is whether the trial court erred in considering the victim's mental handicap as a factor in aggravation. The court used the victim's mental handicap three times in discussing the factors in aggravation: (1) defendant's conduct caused or threatened serious harm because of the victim's young mental age; (2) the act was committed against a mentally handicapped individual; and (3) defendant abused his trust and the victim had an approximate mental age of three years.

■■ ■ Defendant first argues that the victim's mental handicap was an element of the offense, and thus could not be used as an aggravating factor. We disagree. A factor implicit in the offense for which a defendant has been convicted generally cannot be used as an aggravating factor in sentencing for that offense absent a clear legislative intent to accomplish that result. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 547 N.E.2d 429.) However, the fashioning of a sentence depends upon many factors including " ' "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." ' " (*People v. Saldivar* (1986), 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143, quoting *People v. Hunter* (1981), 101 Ill. App. 3d 692, 694, 428 N.E.2d 666, 668.) Defendant argues *Ferguson*, and *People v. White* (1986), 114 Ill. 2d 61, 499 N.E.2d 467, make it "unmistakably clear" that a sentencing court cannot consider the extreme disability of the complainant when that disability is an element of the offense. However, the victim's severe mental retardation is not an element of the offense for which defendant was convicted and sentenced. Defendant was convicted of

attempt (criminal sexual assault) in that he attempted to knowingly commit an act of sexual penetration upon a victim "unable to give knowing consent." The victim's severe mental retardation involves the nature and extent of the offense. Although the trial judge was incorrect in his assertion that the victim's severe mental retardation was implicit in and an element of the offense, he properly considered it as pertaining to the nature and extent of the offense. As the court noted, the victim, although 23 years old, was as a practical matter a little child, unable to defend herself because of her severe mental retardation.

■ The two cases defendant relies on, *Ferguson* and *White*, are factually distinguishable from the present case as they both involved enhanced-penalty offenses in which the aggravating element of the offense was the age of the victim. In *Ferguson*, the supreme court held that the age of a victim cannot be considered when enhancing the defendant's sentence where the penalty for the underlying offense had already been enhanced based upon the age of the victim. Similarly, in *White*, the supreme court held the general fact that a victim is a child under the age of 13 could not be considered as an aggravating factor in sentencing for aggravated battery of a child, as a necessary element of that offense is that the victim be less that 13 years of age (Ill. Rev. Stat. 1983, ch. 38, par. 12—4.3). In the present case, defendant was not convicted of an enhanced-penalty offense which had as an aggravating element the victim's severe mental retardation and mental age. Thus, it was proper for the court to rely on the victim's severe mental handicap and approximate mental age as factors in aggravation.

Defendant also argues the court erred in using the victim's mental handicap to find that his conduct caused or threatened serious harm. Defendant believes serious harm is inherent in the offense of attempt (criminal sexual assault) and that, if the court was correct in its use of the threat of harm, any victim who could not give knowing consent would suffer serious harm from a defendant's conduct. Defendant further argues that if the harm or threat of harm can be considered, the risk of harm must be greater than that inherent in almost all of this type of crime. *People v. Allen* (1981), 97 Ill. App. 3d 38, 422 N.E.2d 254.

■ It is true that a court may not consider an aggravating factor which is the end result and implicit in the offense for which the sentence is imposed. However, a court may properly consider as a factor in aggravation harm which is not the end result of and implicit in all similar offenses for which sentence is imposed. (*People v. Ehrich*

(1988), 165 Ill. App. 3d 1060, 519 N.E.2d 1137 (holding that a circuit court may consider as a factor in aggravation the degree of psychological harm caused a victim even when serious bodily harm is arguably implicit in the offense of which the defendant was found guilty).) In the instant case, the court could reasonably consider the psychological harm to the victim because it was not the end result of or implicit in the offense of attempt (criminal sexual assault). It may also be said that the risk of harm is much greater here than in almost all other attempted criminal sexual assaults due to the victim's severe mental retardation and approximate mental age of three.

Defendant's third claim on appeal is that he was deprived of due process of law in violation of the fourteenth amendment of the United States Constitution because the court found the victim's mental age to be three years old and used it as an aggravating factor. Defendant claims that the trial court improperly relied on the victim's mental age because the only evidence to support the finding was introduced at the preliminary hearing by George Bengel, the program coordinator for the JAARC. Defendant claims that Bengel provided no basis for his statement.

■ A sentencing judge is not bound by normal evidentiary rules when determining factors in aggravation and mitigation, but the evidence must be relevant and reliable. (*People v. Crews* (1967), 38 Ill. 2d 331, 231 N.E.2d 451.) Accuracy and reliability of evidence are tested by the rigor of cross-examination. (*People v. Kirk* (1978), 62 Ill. App. 3d 49, 52-53, 378 N.E.2d 795, 798; see also *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Defendant twice failed to object to Bengel's statements concerning the victim's approximate mental age. Defendant only objected to Bengel's testimony that he believed the victim appeared to *act* like a child. Moreover, defendant had the opportunity to cross-examine Bengel during the preliminary hearing concerning the victim's mental age, but chose not to do so.

Defendant also makes an issue of the fact that Bengel first testified he had been advised the victim's mental age was approximately three to *five* years, but later answered affirmatively when asked by the State if the victim had been diagnosed as having a mental age of between three to *eight* years. This discrepancy, probably no more than a misstatement, could have been clarified under cross-examination, which defendant failed to do.

Most important here is the fact that at defendant's guilty plea hearing, the trial court took judicial notice of Bengel's testimony concerning the victim's mental age. The court asked defense counsel if he had any objection to this, and defense counsel replied, "No, no objec-

tion." The testimony became part of the factual basis for the defendant's guilty plea without objection by defense counsel.

■ The court later offered defendant the opportunity to present evidence to discredit Bengel's testimony at the hearing on the motion to strike the victim-impact statement and police report. The court informed defendant that he could subpoena witnesses, such as the police officer who wrote the victim's approximate mental age in his report. Defendant could have asked the officer where he received the information and questioned its reliability. Defendant failed to do this. Because defendant failed to object to Bengel's testimony during the preliminary hearing, failed to cross-examine Bengel concerning the victim's mental age, and failed to object to this testimony becoming the factual basis for defendant's plea, we find no error in the court's use of the victim's mental age as a factor in aggravation.

Defendant does cite several cases as examples of courts remanding for resentencing when the sentencing court considered unreliable information. (*People v. Washington* (1984), 127 Ill. App. 3d 365, 468 N.E.2d 1285; *People v. Vaughn* (1978), 56 Ill. App. 3d 700, 371 N.E.2d 1248; *People v. Hammock* (1979), 68 Ill. App. 3d 34, 385 N.E.2d 796.) However, none of the cases cited have the additional facts of the instant case, *i.e.*, the failure to object to testimony and the failure to object to testimony becoming part of the factual basis for defendant's guilty plea.

■ Defendant's fourth issue on appeal is whether the court erred in relying on the statutory aggravating factor in section 5—5—3.2(a)(13), that defendant held a position of trust or supervision in relation to the victim and the victim was under the age of 18. Defendant claims the court erred for several reasons: (1) attempt (criminal sexual assault) is not a crime listed in subsection (13) that would allow its use as an aggravating factor; and (2) the victim was not under the age of 18. We need not discuss defendant's assertions because the court did not rely on subsection (13) as an aggravating factor. Although the court at first incorrectly stated that it relied on the factor set forth in subsection (13), it later clarified its position by stating that it relied upon the breach of trust and the victim's severe mental handicap, and not statutory factor in subsection (13). A trial court is not bound by the usual rules of evidence but may search anywhere within reasonable bounds for other facts tending to aggravate or mitigate the sentence. (*People v. Allen* (1983), 119 Ill. App. 3d 845, 457 N.E.2d 77.) The breach of trust defendant displayed and the severe mental handicap of the victim are certainly proper factors to consider in aggravation.

Defendant's final argument is that the trial judge failed to consider his rehabilitative potential and placed excessive emphasis on retribution and deterrence in fashioning his sentence. Defendant cites several cases as examples of appellate courts reversing on sentences and insists that appellate courts now afford less deference to the trial court's discretion in sentencing. (See, *e.g., People v. O'Neal* (1988), 125 Ill. 2d 291, 531 N.E.2d 366; *People v. Smith* (1989), 178 Ill. App. 3d 976, 533 N.E.2d 1169; *People v. Colter* (1989), 181 Ill. App. 3d 392, 536 N.E.2d 1372; *People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859; *People v. Boclair* (1989), 129 Ill. 2d 458, 544 N.E.2d 715.) Defendant urges us to follow this new "willingness" of appellate courts to afford less deference to the sentence imposed when a trial court fails to place sufficient emphasis on the defendant's rehabilitative potential, and to reverse his sentence. We decline.

▮ Imposition of a sentence is a matter of judicial discretion and the standard of review used to determine whether a sentence is excessive is whether the trial court abused that discretion. (*O'Neal*, 125 Ill. 2d 291, 531 N.E.2d 366.) The reason for this standard is that the trial judge is normally in a better position to consider credibility, demeanor, general moral character, mentality, social environment, habits, and age of the defendant. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) Thus, a reviewing court will not substitute its judgment for that of a trial court merely because it would have balanced the appropriate sentencing factors differently. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

Defendant argues that while the State presented no evidence in aggravation, he presented a great deal of evidence in mitigation, including his (1) history of employment; (2) good family life; (3) lack of criminal record; (4) diabetes and chronic back pain; (5) low intelligence; (6) show of remorse; and (7) willingness to accept treatment and counseling. Defendant also argues that the court refused to consider the progesterone injections and his potential for rehabilitation. Defendant's assertion is incorrect, however, as the judge considered these factors, but accorded them less weight than the factors in aggravation, especially the abuse of trust. The court also had serious doubts as to whether the progesterone treatment would be successful in defendant's situation, as such treatment is normally used in the treatment of pedophiles.

Defendant further argues that he is in a similar situation as the defendants in *Smith* and *Harris* and should therefore be resentenced. In *Smith*, the defendant, a 17-year-old mentally retarded youth with no criminal history, was sentenced to 30 years for murder. The only

apparent aggravating factor present was the need to deter others. The appellate court believed that the sentencing court failed to consider the mitigating factors present, including the defendant's character and attitude, which indicated he was unlikely to commit another crime. Because of this, the *Smith* court remanded the case for resentencing. In the instant case, however, it is clear that there is more than one aggravating factor, and the court considered all the mitigating factors present as well as defendant's rehabilitative potential. The court simply held the firm belief that defendant needed to be incarcerated for a period of time to ensure he would not commit a similar crime.

In *Harris*, the defendant's sentence for aggravated criminal sexual assault was found to be in gross disparity with sentences imposed in factually similar cases. In fact, the defendant in *Harris* was given a longer sentence than even more serious cases. Because of this, the appellate court "cautiously" found that the sentencing court erred in failing to consider the defendant's substantial rehabilitative potential. (*Harris*, 187 Ill. App. 3d at 844, 543 N.E.2d at 865.) Defendant offers no factually similar cases which would show a "gross disparity" between his sentence and the sentences of others convicted of similar crimes.

■■ Attempt (criminal sexual assault) is a Class 2 felony (Ill. Rev. Stat. 1987, ch. 38, pars. 12—13(b), 8—4(c)(3)), which carries a sentencing range of not less than three nor more than seven years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(5)). Defendant's sentence was within the range for attempt (criminal sexual assault), and absent an abuse of discretion, the sentence will be upheld.

Affirmed.

GREEN and STEIGMANN, JJ., concur.